IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JEFFREY KIRK TRNAVSKY,                          3:10-CV-06344-BR

          Plaintiff,                            OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.

KATHRYN TASSINARI
MARK A. MANNING
Harder, Wells, Baron & Manning, P.C.
474 Willamette
Suite 200
Eugene, OR 97401
(541) 686-1969

          Attorneys for Plaintiff

1 - OPINION AND ORDER

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053

**DAVID MORADO**
Regional Chief Counsel
**JEFFREY R. McCLAIN**
Special Assistant United States Attorneys
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221A
Seattle, WA  98104
(206) 615-2732

        Attorneys for Defendant


**BROWN, Judge.**

        Plaintiff Jeffrey Kirk Trnavsky seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA).  The Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

        For the reasons that follow, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of benefits.


2 - OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Plaintiff filed an application for DIB on August 7, 2008, alleging a disability onset date of July 17, 2008. Tr. 112.[1]  The application was denied initially and on reconsideration.  An Administrative Law Judge (ALJ) held a hearing on February 2, 2010.  Tr. 23-76.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified.

The ALJ issued a decision on April 16, 2010, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 13-22.  Pursuant to 20 C.F.R. § 404.984(d), that decision became the final decision of the Commissioner on August 27, 2010, when the Appeals Council denied Plaintiff's request for review.

## BACKGROUND

Plaintiff was born on January 12, 1955, and was 55 years old at the time of the hearing.  Tr. 30, 112.  Plaintiff has a high-school education.  Tr. 122.  Plaintiff has past relevant work experience as an equipment operator and merchant seaman. Tr. 144.

Plaintiff alleges disability due to Post-traumatic Stress

---

[1] Citations to the official transcript of record filed by the Commissioner on April 5, 2011, are referred to as "Tr."

3 - OPINION AND ORDER

Disorder (PTSD) and depression.  Tr. 143.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After carefully reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 19-20.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Robbins v.
Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal
quotations omitted).

The ALJ is responsible for determining credibility,
resolving conflicts in the medical evidence, and resolving
ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.
2001). The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision. *Robbins,*
466 F.3d at 882. The Commissioner's decision must be upheld even
if the evidence is susceptible to more than one rational
interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir.
2005). The court may not substitute its judgment for that of the
Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir.
2006).

## DISABILITY ANALYSIS

**I.    The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir.
2007). *See also* 20 C.F.R. § 404.1520. Each step is potentially
dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial

5 - OPINION AND ORDER

gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R. § 404.1520(a)(4)(I).

In Step Two, the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. § 404.1520(a)(4)(iii).  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must assess the claimant's Residual Functional Capacity [RFC].  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Soc. Sec. Ruling (SSR) 96-8p.  A "'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule." SSR 96-8p, at *1.  In other words, the Social Security Act does not require complete

6 - OPINION AND ORDER

incapacity to be disabled. *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996). The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments. An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R. § 404.1520(a)(4)(v). Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

7 - OPINION AND ORDER

## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since his July 17, 2008, alleged onset date.  Tr. 15.

At Step Two, the ALJ found Plaintiff has the severe impairments of PTSD and alcohol abuse.  Tr. 15.

At Step Three, the ALJ concluded Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  Tr. 13.  The ALJ found Plaintiff has the RFC to perform a "full range of work at all exertional levels" but limited Plaintiff to "simple routine, repetitive tasks that involves [*sic*] no more than occasional interaction with co-workers, and involves no interaction with the public."  Tr. 16.

At Step Four, the ALJ found Plaintiff is incapable of performing his past relevant work.  Tr. 20.

At Step Five, the ALJ found Plaintiff can perform jobs that exist in significant numbers in the national economy. Tr. 20.  Accordingly, the ALJ found Plaintiff is not disabled.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) improperly rejecting Plaintiff's testimony, (2) improperly rejecting the opinions of treating physicians, (3) improperly failing to give great weight

to the Veterans' Administration (VA) rating decision, and (4) improperly concluding Plaintiff could perform other work in the national economy.

## I.    **Plaintiff's testimony**.

Plaintiff contends the ALJ erred when he improperly rejected Plaintiff's testimony.

In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and he must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton*, 799 F.2d 1403, 1407 (9th Cir. 1986).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if she provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient. *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81 F.3d at 834).

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are generally not credible to the extent they are inconsistent with the above [RFC]."  Tr. 19.

The ALJ noted Plaintiff's PTSD and depression symptoms began in the 1970s.  Nevertheless, Plaintiff was able to work successfully until 2008.  Tr. 17.  The record, however, reflects Plaintiff first sought treatment in 2005 because his PTSD symptoms worsened due to extremely rough weather on a merchant-marine trip.  Tr. 332.  In 2006 Plaintiff reported to Susan Aviotti, M.S., L.P.C., treating counselor, that his symptoms had been becoming worse.  In August 2006 Aviotti opined Plaintiff was severely "occupationally and socially impaired" due to PTSD.  Tr. 226.  In September 2006 Aviotti noted "[it] is astounding [that Plaintiff] hasn't unglued at the seams in view of his level of stress and how he deals with others."  Tr. 220.  In addition, Plaintiff's condition worsened in 2007 after he found his girlfriend's body in their trailer after she committed suicide.  Tr. 213.

The ALJ also pointed out that Plaintiff's friend Julie McGrath "described [Plaintiff] as engaging in an active daily life, attending to household repairs, yard maintenance, and

automobile care" as well as personal care and hygiene.  Tr. 17.
The record reflects, however, that McGrath also stated Plaintiff
only does household and home maintenance when his "anxiety is not
severe."  Tr. 153.  McGrath stated Plaintiff "paces and talks to
process anxiety" in the afternoon and evening, and he "has
troubled sleep."  Tr. 153.  McGrath also stated Plaintiff "can
not [sic] relax and shop has to run in and out of stores as fast
as possible."  Tr. 156.

    The ALJ found Plaintiff did not follow through with
recommendations to take psychotropic medication and to stop
drinking excessively.  Tr. 17.  The record reflects, however,
Plaintiff reported to Peter Lam, Ph.D., treating psychiatrist,
and Richard Staggenborg, M.D., treating physician, that he
refused to take medication because he believed that doing so
would cause him to lose his coast-guard license and his job.
Tr. 234, 325.  Plaintiff also was concerned about the effects of
medication that he believes led to his girlfriend's suicide.
Tr. 213, 385.  In fact, the record reflects after Plaintiff lost
his job in July 2008, he was willing to take psychotropic
medication and began doing so.  Tr. 246.  In addition, the record
reflects Plaintiff stopped drinking excessively for the most part
in August 2008 although he still had occasional lapses.  Tr. 246,
348, 387, 534.

    The ALJ noted Plaintiff reported to Dr. Lamb that he did not

11 - OPINION AND ORDER

drink when he was "on the boat" in a merchant-marine job, but Plaintiff reported to Dr. Staggenborg that he had been involved in a fist fight with another crew member when they were both intoxicated. Tr. 234, 401. In addition, Plaintiff testified at the hearing that the fight occurred while he was "tied up" in Honolulu rather than when he was deployed at sea. Tr. 31.

The ALJ noted Plaintiff admitted to Aviotti in October 2006 that he used marijuana, but he told Charles Reagan, M.D., examining psychiatrist, that he did not use any drugs other than alcohol. Tr. 220. In August 2008, however, Plaintiff reported to Dr. Staggenborg that he had stopped using marijuana, and Plaintiff was not examined by Dr. Reagan until November 2008.

The ALJ also noted Plaintiff had not followed through with a consistent mental-health treatment provider. The record reflects, however, Plaintiff was unable to continue treatment with Aviotti after Plaintiff was awarded VA benefits and Dr. Staggenborg left his practice for a year. Tr. 44, 213.

The Court concludes on this record that the ALJ erred when he rejected Plaintiff's testimony as to the intensity, persistence, and limiting effects of his symptoms because the ALJ did not provide legally sufficient reasons supported by the record for doing so.

## II. Medical opinion testimony.

Plaintiff contends the ALJ erred when he improperly rejected

the opinions of Linda Schmechel, Ph.D., examining psychologist, and Dr. Staggenborg.

An ALJ may reject a treating or examining physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart,* 278 F.3d 947, 957 (9th Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957.  *See also Lester v. Chater*, 81 F.3d at 830-32.

A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999).

On April 17, 2006, Dr. Schmechel conducted an initial evaluation of Plaintiff for PTSD.  Dr. Schmechel noted Plaintiff's military history including his time in Vietnam and events that occurred during his military service there as well as Plaintiff's current mental state.  Tr. 237-41.  Dr. Schmechel noted Plaintiff had

> found extremely effective ways of forestalling his
> re-integration to the larger society after serving

13 - OPINION AND ORDER

in the military - to the point that he is now
totally unable to do so.  He has constructed a
lifestyle that enables him to continue being "on
watch" so that his atypical sleep pattern is
adaptive in his presents [*sic*] life. . . .  PTSD
symptoms continue unabated because of his
lifestyle.  He meets all necessary criteria for
PTSD. . . .  I don't believe he would be able to
work in any other job without major explosive
behavior that would harm others.

Tr. 241.

On August 5, 2008, Dr. Staggenborg evaluated Plaintiff.

Plaintiff reported a "number" of "continuing intrusive symptoms"

of PTSD including flashbacks, panic attacks, nightmares,

violence, irritability, and anger.  Tr. 281-82.  Plaintiff

reported he had been having "increasing difficulty going out on

the ships, in close quarters with people he often could not get

along with."  Tr. 283.  Plaintiff reported having "very

aggressive thoughts toward crew mates, which occasionally erupted

into violence."  Tr. 283.  As a result Plaintiff believed he was

going to be fired when he quit his job in April 2007.  Tr. 283.

Plaintiff was subsequently fired from another job without cause,

but Plaintiff believed it was because he had antagonized a co-

worker.  Tr. 284.  Dr. Staggenborg opined Plaintiff suffers from

"[s]evere [PTSD], clearly underrated in terms of overall

functioning in my initial evaluation."  Tr. 284.  Dr. Staggenborg

also concluded Plaintiff "shows substantial impairment in

essentially all areas of functioning, including vocational,

social, leisure time activities, and mood and judgment.  It is

14 - OPINION AND ORDER

this examiner's opinion that he is completely unemployable."
Tr. 284.

The ALJ did not address the opinions of Drs. Schmechel and
Staggenborg.  Instead the ALJ noted Plaintiff had been assessed
"several low GAF[2] scores," but the ALJ found these are "not an
accurate appraisal of a person's functional capabilities" and
were assigned to Plaintiff when he was working full time.
Tr. 19-20.  This, however, is not a specific, legitimate reason
for rejecting the opinions of Drs. Schmechel and Staggenborg.  In
addition, the ALJ rejected the opinions of Drs. Schmechel and
Staggenborg on the ground that they relied on Plaintiff's
statements of his condition, which the ALJ found were not
credible.  The Court, however, has concluded the ALJ erred when
he found Plaintiff's testimony not credible.

The Court concludes on this record that the ALJ erred when
he rejected the opinions of Drs. Schmechel and Staggenborg
because he did not provide legally sufficient reasons supported
by the record for doing so.

**III. Step Five.**

Plaintiff contends the ALJ erred at Step Five when he
concluded Plaintiff could perform other work existing in the
national economy because the ALJ failed to include in his

---

[2] The GAF scale is used to report a clinician's judgment of
the patient's overall level of functioning on a scale of 1 to
100.

15 - OPINION AND ORDER

assessment of Plaintiff's RFC the limitations set out by
Plaintiff and Drs. Schmechel and Staggenborg.

Because the Court has concluded the ALJ erred when he
improperly rejected Plaintiff's testimony and the opinions of
Drs. Schmechel and Staggenborg, the Court also concludes the ALJ
did not pose an adequate hypothetical to the VE.  Thus, the VE
could not give an appropriate opinion as to whether Plaintiff
could perform other work in the national economy.


**REMAND**

The Court must determine whether to remand this matter for
further proceedings or to remand for calculation of benefits.

The decision whether to remand for further proceedings or
for immediate payment of benefits generally turns on the likely
utility of further proceedings.  *Id.* at 1179.  The court may
"direct an award of benefits where the record has been fully
developed and where further administrative proceedings would
serve no useful purpose."  *Smolen*, 80 F.3d at 1292.

The Ninth Circuit has established a three-part test "for
determining when evidence should be credited and an immediate
award of benefits directed."  *Harman v. Apfel*, 211 F.3d 1172,
1178 (9th Cir. 2000).  The court should grant an immediate award
of benefits when

> (1) the ALJ has failed to provide legally
> sufficient reasons for rejecting such

16 - OPINION AND ORDER

> evidence, (2) there are no outstanding issues
> that must be resolved before a determination
> of disability can be made, and (3) it is
> clear from the record that the ALJ would be
> required to find the claimant disabled were
> such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question:  Whether the ALJ would have to award benefits if the case were remanded for further proceedings.  *Id.* at 1178 n.2.

It is clear from this record that the ALJ would be required to find that Plaintiff is disabled if his testimony and the opinions of Drs. Schmechel and Staggenborg were credited.  The Court, therefore, concludes further proceedings would not serve any useful purpose.

Because the Court has credited Plaintiff's testimony and the opinions of Drs. Schmechel and Staggenborg, which result in a finding that Plaintiff is disabled and, therefore, entitled to benefits, the Court does not need to address Plaintiff's remaining argument that the ALJ erred when he failed to give great weight to the rating decision of the VA.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate calculation and award of

benefits.

IT IS SO ORDERED.

DATED this 26th day of January, 2012.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge

18 - OPINION AND ORDER